# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Opollo R. Johnson, #11326-021, ) | C/A No.: 1:17-923-HMH-SVH |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| H. Joyner, Warden, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Opollo R. Johnson ("Petitioner"), proceeding pro se, filed this petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is a federal prisoner at the Federal Correctional Institution in Estill, South Carolina ("FCI Estill"), serving a 240-month sentence rendered by the United States District Court for the Southern District of Georgia. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's return and motion to deny habeas petition. [ECF Nos. 10, 11]. Because Respondent attached documents to his motion, the undersigned considers it as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. *See also* Fed. R. Civ P. 12(c). Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [ECF No. 12]. Petitioner filed a timely response on August 9, 2017. [ECF No. 14].

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that the court grant Respondent's motion to deny habeas petition.

I. Factual and Procedural Background

Petitioner claims he was asked to provide a urine sample on August 2, 2013, while housed in the special housing unit ("SHU") of FCI Estill. [ECF No. 1-1 at 1]. Petitioner states he provided the sample and signed a chain of custody form confirming the urine was his; however, he claims his sample was not sealed in his presence and the form was not attached to his urine sample. *Id.* at 2. Petitioner says he was escorted back to his cell and prison staff proceeded to collect urine samples from inmates in the general population. *Id.* Petitioner states he believes his urine sample was mixed up with urine samples taken from the general population inmates and his signed seal placed on a general population urine sample. *Id.*

On August 21, 2013, Lieutenant J. Solvik ("Solvik") wrote incident report #2482792 citing Petitioner with violating Inmate Discipline Code 112: Use of Narcotics (Marijuana). [ECF No. 11-2 at 1]. Solvik indicated he had reviewed the urine specimen results for the sample attached to Petitioner's signed chain of custody form and that Petitioner's sample had tested positive for marijuana. *Id.* Solvik noted that FCI Estill's health services confirmed Petitioner had not been issued any medication which would have produced a positive result for marijuana. *Id.* Petitioner was given a copy of the incident report which included a description of the incident and the prohibited act with

which Petitioner was charged. *Id.* Lt. C. Elliot ("Elliot") investigated the incident report later that day, and he interviewed Petitioner, who stated he believed his cell mate had exposed him to marijuana smoke because his cell mate would cover the vent and place a towel underneath the door when he smoked. *Id.* at 2. Elliott found the charges to be true as written and the matter was referred to the Unit Discipline Committee ("UDC") for further review. *Id.*

The UDC conducted a hearing on August 23, 2013, and Petitioner was given the opportunity to make a statement in his defense. *Id.* at 1. Petitioner did not make a verbal statement and indicated he would submit a statement in writing. *Id.* Due to the seriousness of the charge and the need to impose greater sanctions than what was available at the UDC level, the UDC referred the charge to the disciplinary hearing officer ("DHO") for further action. *Id.* Petitioner was given written notices of the disciplinary hearing and inmate rights at a disciplinary hearing the same day. [ECF Nos. 11-3, 11-4]. Petitioner requested a staff representative to assist him during the hearing, and he indicated he did not wish to call any witnesses. [ECF No. 11-3]. Petitioner claims he requested a copy of the Phamatech Lab documents to help him prepare and present a defense to his narcotics charge. [ECF No. 1-1 at 3].

The DHO hearing was held on September 4, 2013. [ECF No. 11-6]. Petitioner was present and advised of his rights, which he indicated he understood. *Id.* at 2. Petitioner waived his right to a staff representative even though his staff representative walked in during the hearing. *Id*. at 1. Petitioner testified during the hearing and denied the charges, stating he had not smoked marijuana since his incarceration and claimed the urine sample

3

could not be his because he never went to the visiting room to provide his sample, but submitted his sample in the SHU. *Id.* Petitioner also claimed potential second-hand smoke could have contributed to a positive test. *Id. at 2*. Petitioner alleges he requested the Phamatech report and sought to call his cellmate and a Phamatech representative to testify about his second-hand smoke theory, but the DHO denied his requests. [ECF No. 1-1 at 4]. The DHO found Petitioner guilty and sanctioned him, in part, to 40 days loss of good time, and 60 days loss of non-vested good conduct time. [ECF No. 11-6 at 3]. A copy of the DHO's decision was delivered to Petitioner, along with notice of his appeal rights. *Id.* Petitioner appealed the DHO's decision through the administrative remedy process to both the Regional and Central Office levels; his appeals were denied. [ECF No. 11 at 7].

Petitioner alleges the DHO deprived him of his due process rights when he (a) denied his request to call his cellmate or representatives from Phamatech to testify about his second hand smoke theory, (b) ignored his request for the urinalysis report from Phamatech Laboratories, and (c) relied on false reports and contaminated evidence to convict him. [ECF No. 1-1 at 6–10]. Petitioner also argues that his incident report was untimely. *Id.* at 9. Petitioner asks that his incident report and conviction be vacated, and his good time restored. [ECF No. 1 at 9].

II.     Discussion

    A.     Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56.

B.   Analysis

Petitioner claims he was denied his due process rights, resulting in a loss of good time credits, when the institution issued an untimely incident report and the DHO denied him the right to call witnesses or present evidence during the DHO hearing. [ECF No. 1-1 at 6–7, 9]. Certain procedural safeguards apply when loss of statutory good time credit is at issue. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). In *Wolff*, the Supreme Court set out the requirements for due process in prison disciplinary hearings:

1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. Providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action;

3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. Providing impartial fact finders.

*Id.* at 563–72.

Petitioner does not dispute that he was provided with the majority of the procedural safeguards outlined in *Wolff*. A review of the record reveals that Petitioner was (a) given written notice of the charges at least 24 hours before the DHO hearing [ECF No. 11-2], (b) provided a copy of the DHO report that outlined the evidence relied on by the DHO officer in finding Petitioner guilty of the narcotics charge and the reasons for the disciplinary action [ECF No. 11-6], and (c) advised of his right to be assisted by a staff representative, which Petitioner subsequently declined [ECF Nos. 11-3, 11-6]. Further, Petitioner has failed to provide any evidence that the DHO was not impartial.

Petitioner's argument concerning the violation of his due process rights focus on his right to call witnesses and present evidence at his DHO hearing. [ECF No. 1-1 at 6–7,

9].[1] Respondent states Petitioner was advised of his right to call witnesses and to present documentary evidence [ECF No. 11-3] and offers the DHO report to show that Petitioner declined to call any witnesses and did not offer any documentary evidence at the DHO hearing. [ECF No. 11-6]. In his response, Petitioner admits he did not request witnesses prior to the DHO hearing, but argues he attempted to call his prior cell mate and a representative from the Phamatech Laboratories during his hearing. [ECF No. 14 at 1–2]. Petitioner also claims he requested a copy of the urinalysis report and sought to present these documents during his hearing to confirm the broken chain of custody in the urine sample. *Id.* at 2–3. Petitioner submits his own affidavit in support of these claims. *Id.* at 6–8.

Respondent has produced contemporaneous business records to support his argument that Petitioner declined to call witnesses or offer documentary evidence during the DHO hearing. The undersigned finds that Petitioner cannot create a genuine dispute of material fact on this issue by now averring in an affidavit that the DHO denied his request to present witnesses and did not provide him a copy of the requested Phamatech documents or allow him to present these documents during the hearing. *See Larkin v. Perkins*, 22 F. App'x 114, 115 (4th Cir. 2001) (noting that the district court properly found a party's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation" insufficient to stave off summary judgment); *Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (finding a self-serving affidavit, without

---

[1] Although Petitioner also argues that he did not timely receive an incident report [ECF No. 1-1 at 9], there is no due process requirement in *Wolff* that an incident report must be issued within any specific timeline. *Wolff*, 418 U.S. at 564–66.

more, is not sufficient to defeat summary judgment); *United States v. Woods*, No. 5:07-CV-187-BR, 2008 WL 9375548, at *5 (E.D.N.C. Dec. 10, 2008) (granting summary judgment explaining that conclusory statements in affidavits created to oppose summary judgment, without specific evidentiary support, were insufficient to create a genuine issue of fact). The undersigned finds Petitioner was afforded all due process required under *Wolff*.

Petitioner also claims the DHO relied on false reports and tampered, contaminated evidence to convict him of narcotics use, resulting in his loss of good time credits. [ECF No. 1-1 at 10–11]. DHO findings revoking a prisoner's good time credit must be supported by "some evidence in the record." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454–56 (1985). The *Hill* Court declined to adopt a more-stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.* at 456. The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support the decision. *Id.* at 455–56; *Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990) ("Nor does [requiring some evidentiary basis to revoke good time credits] imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review."). This standard requires "only that the

decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). As the *Hill* Court noted:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455–56.

The DHO report notes that the hearing officer relied on (a) the Bureau of Prison's chain of custody form for the urine sample that Petitioner signed, indicating the urine was his and the sample was sealed in his presence, (b) the lab report from Phamatech Laboratories that showed that Petitioner's urine sample tested positive for marijuana, and (c) a report from the institution pharmacist that Petitioner had not been prescribed any medication that would cause a positive result for marijuana. [ECF Nos. 11-2 at 3–5, 11-6]. The undersigned finds that there was evidence in the record to support the DHO's finding that Petitioner was guilty of narcotics use.

To the extent Petitioner alleges he is entitled to relief based on a claim of actual innocence, a claim of actual innocence is not a basis for federal habeas corpus relief. *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000). "The due process clause does not require later consideration of evidence that could have been but was not presented during a prison disciplinary proceeding." *Jones v. McCaughtry*, 6 F. App'x 371, 372–73 (7th Cir. 2001) (citing *McPherson v. McBride*, 188 F.3d 784, 786–87 (7th Cir. 1999)). Instead, courts look only to whether a prisoner received the procedural protections due

under the Constitution and "subsequent tender of additional evidence is irrelevant to [the] due process determination." *Id.* at 373 (citing *McPherson,* 188 F.3d at 787).

III. Conclusion

For the foregoing reasons, the undersigned recommends Respondent's motion to deny habeas petition [ECF No. 11] be granted and the petition for writ of habeas corpus be denied, and the petition dismissed with prejudice.

IT IS SO RECOMMENDED.

September 25, 2017  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).